UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

JOVITA BRANUM, STEPHANIE MILLS,
LINDSEY POOLE, SHEILA RAINES, and
BRENDA SONES                                                                                    PLAINTIFFS

VS.                                                                    CIVIL ACTION NO. 3:12cv513-DPJ-FKB

NATIONAL CREDIT UNION ADMINISTRATION
BOARD AS LIQUIDATING AGENT FOR
VALUED MEMBER CREDIT UNION                                                            DEFENDANT

ORDER

This case is before the Court on Defendant National Credit Union Administration

Board's, as liquidating agent for Valued Members Federal Credit Union, Motion for Summary

Judgment [31]; Plaintiffs Lindsey Poole and Stephanie Mills's Motion for Partial Summary

Judgment or in the Alternative a Hearing [35]; and Plaintiffs Jovita Branum, Sheila Raines,

Brenda Sones, Poole, and Mills's Voluntary Motion for Dismissal Without Prejudice [36].  For

the reasons discussed below, the Court finds that all motions should be denied without prejudice.

I.        Facts and Procedural History

Plaintiffs Jovita Branum, Stephanie Mills, Lindsey Poole, Sheila Raines, and Brenda

Sones are former employees of Valued Member Federal Credit Union (VMFCU).  On December

14, 2010, Plaintiffs filed their Complaint with this Court in a predecessor case asserting claims

against VMFCU and several of its employees for overtime compensation under the Fair Labor

Standards Act (FLSA) and state-law claims for slander and intentional infliction of emotional

distress (IIED).  *See Branum v. Richardson*, 3:10cv852-DPJ-FKB (original action).

While that case was pending, VMFCU apparently became insolvent, and on May 31,

2011, the National Credit Union Administration Board (NCUA) initiated involuntary liquidation

proceedings against VMFCU and appointed itself as liquidating agent under 12 U.S.C. § 1787(a).

NCUA also substituted itself as a defendant in place of VMFCU, which had ceased to exist.  The

Court then granted NCUA's motion for a stay in accordance with § 1787(b)(12) to allow NCUA

to administratively determine the claims against the credit union.   Plaintiffs submitted their

claims to NCUA, which eventually disallowed all claims on February 17, 2012.  Admin. Rec.

Part 1 [30] at 97.

On motion from Defendant Ike Rookmaker, a former VMFCU board member, the Court

lifted the stay by text-only Order on March 13, 2012.  Thereafter, the Court conducted a

telephonic case-management conference on April 11, 2012, with all parties.  Construing the

procedural posture of the claims against it as an appeal of the disallowance under the

Administrative Procedures Act (APA), NCUA moved to sever itself from Plaintiffs' claims

against the individual defendants.  The magistrate judge agreed and severed NCUA into the

present action for review of the agency determination.  Order [1] July 20, 2012; Case Mgmt.

Order [9] at 1.  The order was not appealed, but Plaintiffs did move [16] for clarification of the

standard of review, which the magistrate judge indicated was the standard set forth in 5 U.S.C.

§ 706(2)(A) of the APA.  Order [26] Dec. 13, 2012.  Based on this standard, the magistrate judge

also limited Plaintiffs to the administrative record and denied their motion [15] for discovery.  *Id.*

Plaintiffs never appealed.

In accordance with the motions deadline, the parties filed cross-motions for summary

judgment.  NCUA filed a motion [31] for summary judgment affirming disallowance of the

claims.  Plaintiffs filed their Voluntary Motion for Dismissal Without Prejudice [36], docketed

incorrectly as a stipulation, seeking to dismiss without prejudice each Plaintiff's IIED claim and

Branum, Raines, and Sones's FLSA and slander claims.  Plaintiffs also moved [35] for partial

summary judgment seeking reversal of NCUA's disallowance of Poole and Mills's FLSA and

slander claims, or in the alternative for a hearing.  All of the motions and the stipulation are

opposed.

As the Court began reviewing these motions, questions arose as to whether the APA

should apply.  But given the history of the case, the Court was reluctant to enter a *sua sponte*

order on that issue without giving the parties an opportunity to be heard.  The Court therefore

took the unusual step of providing the parties with a draft memorandum on the issue and then

invited comment.  Those submissions have been received, and the Court is prepared to rule.  As

to the exhausted claims, the Court has subject-matter jurisdiction.

II.     Analysis

This matter raises an open question of law in an odd procedural posture.  The question is

whether the NCUA's adverse determination of Plaintiffs' claims is subject to the APA's

deferential standard of review limited to the administrative record, or whether Plaintiffs are

entitled to continue their claims in this Court with *de novo* review after discovery.  As for the

posture, the magistrate judge has already held that the APA applies and therefore determined the

standard of review and limited the parties to the administrative record—a decision Plaintiffs

never appealed.

This Order addresses both issues as they relate to NCUA's motion for summary

judgment.  It will then address Plaintiffs' motions for summary judgment and voluntary

dismissal.  Finally, the Court will examine the posture of the case going forward.

        A.       NCUA's Motion for Summary Judgment

           1.      Waiver

It is not the Court's job to litigate the Plaintiffs' case, and Defendants are understandably annoyed that the standard of review issue was raised *sua sponte*. As they note, Plaintiffs never appealed the magistrate judge's December 13, 2012 Order [26] ruling that the APA applies. NCUA therefore posits that all issues regarding the APA and the standard of review were long since waived.

It would certainly be easier for the Court to credit NCUA's arguments and apply the APA. Doing so would avoid serious delay and other unfortunate ramifications from this Order. But NCUA's motion is entirely dependent upon application of the correct standard. And, significantly, this issue cannot be waived. *Izzarelli v. Rexene Prods. Co.*, 24 F.3d 1506, 1519 n.24 (5th Cir. 1994) ("a standard of review cannot be waived"); *Avoyelle Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 905 n.16 (5th Cir. 1983) (finding no merit to the argument that the defendant waived their standard-of-review argument because "parties cannot agree to expand the jurisdiction of the federal courts"). As a result, the Court must determine the correct standard of review. *Worth v. Tyer*, 276 F.3d 249, 262 n.4 (7th Cir. 2001) ("[T]he court, not the parties, must determine the standard of review, and therefore, it cannot be waived.").

           2.      Standard of Review

An understanding of the standard of review for this case begins with 12 U.S.C. § 1787, which governs claims against liquidated credit unions. Although the statute is lengthy, it is important to recount the following key components as they will be analyzed in some detail:

    (a) Liquidation by Board; bond; appointment of agent; fees to be fixed by Board

(1)(A) Upon its finding that a Federal credit union insured under this subchapter is bankrupt or insolvent, the Board shall close such credit union for liquidation and appoint itself liquidating agent therefor.

(b) Powers and duties of Board as conservator or liquidating agent

. . .

(3) Authority of liquidating agent to determine claims
(A) In general
The Board may, as liquidating agent, determine claims in accordance with the requirements of this subsection . . . .

. . .

(5) Procedures for determination of claims
(A) Determination period
(I) In general . . . .
. . . [T]he Board shall determine whether to allow or disallow the claim . . . .

. . .

(D) Authority to disallow claims
The liquidating agent may disallow any portion of any claim . . . which is not proved to the satisfaction of the liquidating agent.

. . .

(F) Legal effect of filing

. . .

(ii) No prejudice to other actions
. . . [T]he filing of a claim with the liquidating agent *shall not prejudice* any right of the claimant *to continue* any action which was filed before the appointment of the liquidating agent.

(6) Provision for agency review *or* judicial determination of claims
(A) In general

. . .

the claimant may request administrative review of the claim *in accordance* with subparagraph (A) or (B) of paragraph (7) *or* file suit on such claim (or continue an action commenced before the appointment of the liquidating agent) in the district . . . court of the United States for the district within which the credit union's principal place of business is located. . .

. . .

(7) Review of claims
(A) Administrative hearing

> If any claimant requests review under this subparagraph in lieu of filing or continuing any action under paragraph (6) and the Board agrees to such request, the Board shall consider the claim after opportunity for a hearing on the record.  The final determination of the Board with respect to such claim shall be subject to *judicial review* under *chapter 7 of Title 5*.
> (B) Other review procedures
>> (I) In general
>> The Board shall also establish such alternative dispute resolution processes as may be appropriate for the resolution of claims filed under paragraph (5)(A)(I).

12 U.S.C. § 1787 (emphasis added).

To summarize, the statute allows NCUA to review claims against liquidated credit unions, such as Plaintiffs' claims in this case, and determine whether they should be allowed or disallowed.  12 U.S.C. § 1787(b)(3).  When, as here, the claims were asserted in a lawsuit before liquidation, they are stayed during the administrative proceedings.  *See* § 1787(b)(12).  And if the claims are denied, dissatisfied claimants may further pursue them by either (1) "request[ing] administrative review of the claim . . ."; or (2) "fil[ing] suit on such claim (*or continu[ing] an action commenced before the appointment* of the liquidating agent)" in federal district court.  § 1787(b)(6)(A) (emphasis added).  In this case, Plaintiffs continued their existing federal suit.

These procedures are not in dispute.  But the question is what happens next.  According to NCUA, continued lawsuits become a "review" of the NCUA's decision subject to the APA.  If so, then review is limited to the administrative record to determine if the NCUA's ruling was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

Whether NCUA's position is correct requires construction of the statute.  As often stated, "[t]he primary rule of statutory construction is to ascertain the intent of the legislature from the

statute as a whole and from the language used therein." *Great Am. Ins. Co. of N.Y. v. Lowry*

*Dev., LLC*, 576 F.3d 251, 255 (5th Cir. 2009) (citation and punctuation omitted). It is an

elementary rule of statutory construction "that the words of a statute will be given their plain

meaning absent ambiguity." *Texas Food Indus. Ass'n v. U.S. Dep't of Agric.*, 81 F.3d 578, 582

(5th Cir. 1996) (citation and punctuation omitted).

In this case, Congress adopted § 1787(b) as part of the Financial Institutions Reform,

Recovery, and Enforcement Act of 1989 (FIRREA), which is not a model of clarity.[1] And to

make matters more uncertain, § 1787 does not expressly state a standard of review for pre-

liquidation claims continued in district court post-determination. NCUA argues that this

omission mandates application of the APA. Indeed, *United States v. Carlo Bianchi & Co.*,

reiterates that "where Congress has simply provided for review, without setting forth the

standards to be used or the procedures to be followed, this Court has held that consideration is to

be confined to the administrative record and that no de novo proceeding may be held." 373 U.S.

709, 715 (1963).

NCUA hangs it hat on this language, but the Court must decide whether Congress

"simply provided for review" or did more. *See Chandler v. Roudebush*, 425 U.S. 840, 862 n.37

(1976) (refusing to apply APA despite lack of express statement regarding standard of review

---

[1]As the First Circuit observed in *Marquis v. F.D.I.C.*,

> FIRREA's text comprises an almost impenetrable thicket, overgrown with
> sections, subsections, paragraphs, subparagraphs, clauses, and subclauses—a
> veritable jungle of linguistic fronds and brambles. In light of its prolixity and lack
> of coherence, confusion over its proper interpretation is not only unsurprising—it
> is inevitable.

965 F.2d 1148, 1151 (1st Cir. 1992).

because "[h]ere Congress has not 'simply provided for review' but has affirmatively chosen to grant federal employees the right to maintain a trial De novo" (citing *Carlo Bianchi and Co., Inc.*, 373 U.S. at 715)).

There is no doubt that § 1787(b) provides an avenue for review. But the statute does more, giving claimants the choice to forgo that review and instead continue their pre-liquidation federal suits. More precisely, § 1787(b)(6) states that after an adverse determination, the claimant may seek either "agency review *or* judicial determination." § 1787(b)(6) (emphasis added). "Review" and "determination" are plainly distinguishable, and the fact that Congress used both in the same header indicates the distinction it drew between them. This distinction grows more stark when the two alternatives are examined.

With respect to "judicial determination," the dissatisfied claimant may file in district court or—as in this case—"*continue* an action commenced before the appointment of the liquidating agent . . . ." § 1787(b)(6)(A) (emphasis added). The word "continue" must be given its plain meaning. *Tex. Food Indus. Ass'n*, 81 F.3d at 582. In this context, *Merriam Webster* defines "continue" as meaning "to resume an activity after interruption." *Continue Definition*, Merriam-Webster.com, www.merriam-webster.com/dictionary/continue (last visited Sept. 17, 2013). Thus, once the interruption of the stay is lifted post-determination, the pre-liquidation litigation resumes on its previous course. It is not transformed into an administrative review.

That construction is bolstered by § 1787(b)(5)(F)(ii), which provides that "the filing of a claim with the liquidating agent *shall not prejudice* any right of the claimant *to continue* any action which was filed before the appointment of the liquidating agent." (Emphasis added). Yet

prejudice would occur if the APA applied because the claimant would lose the previously held right to discovery and de novo review in federal court.

Of course a claimant can bypass this "judicial determination" and instead seek "administrative review" under § 1787(b)(6)(A).  Looking at that avenue further demonstrates that Congress distinguished "judicial determinations" from "reviews."  If a claimant elects "administrative review," then § 1787(b)(6)(A) expressly states that review must proceed under "paragraph (7)," *i.e.*, § 1787(b)(7).  That section is entitled, "Review of claims," and it makes no mention of continued claims or "judicial determinations."  Instead, the National Credit Union Administration Board "reviews" the liquidator's determination.  § 1787(b)(7)(A).  Then, the "final determination of the Board with respect to such claim shall be subject to *judicial review under chapter 7 of Title 5*."  *Id*.  (emphasis added).  Here again, Congress distinguished "judicial determination" under § 1787(b)(6)(A) and "judicial review" under § 1787(b)(7), because the latter expressly invokes the APA, the former does not.

Even the use of the terms "judicial determination" and "judicial review" reflect Congress's intent to distinguish § 1787(b)(7), dealing with "[r]eview of claims," and § 1787(b)(6)(A), dealing with "judicial determination" of continued claims.  *Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").  Had it wished, Congress could have easily stated in § 1787(b)(6)(A) that upon the liquidator's determination, the claimant could immediately continue the claim in federal court to seek "judicial review."  It

did not.  Instead, Congress allowed "judicial determination" by "continu[ing]" the federal case without prejudice. 12 U.S.C. §§ 1787(b)(5)(F)(ii), 1787(b)(6)(A).

It is also worth noting that § 1787(b)(7)(B) addresses "[o]ther *review* procedures," to include alternative dispute resolution.  (Emphasis added).  But again, continued suits are not included within the scope of the review subpart B addresses, nor are they addressed in any other subpart of § 1787(b)(7), the only section providing the mechanism for "*[r]eview* of claims." (Emphasis added).

The Court therefore concludes that the Act does provide one avenue for review, but that it does more.  *See Chandler*, 425 U.S. at 862 n.37.  With respect to continued claims after the liquidator's determination, the Act allows the suit filed pre-liquidation to resume in federal court. Such a mechanism is similar to other exhaustion requirements—for example Title VII—and is not a review of the administrative decision.

All of this is firmly bolstered when § 1787(b) and 12 U.S.C. § 1821(d) are considered *in pari materia*.  The language in § 1787(b) was added as part of FIRREA, an act passed to shore-up the regulation of financial institutions in the wake of the savings-and-loan crisis of the 1980s. *See, e.g.*, *Melizer v. Resolution Trust Co.*, 952 F.2d 879, 881 (5th Cir. 1992) (citing H.R. Rep. No. 101–54(I), 101st Cong., 1st Sess. 291–312, *reprinted in* 1989 U.S.C.C.A.N. 86, 87–108). Among the many changes, Congress added administrative claims procedures to 12 U.S.C. § 1821(d), which addresses institutions insured by the FDIC, and added the nearly identical procedures under § 1787(b) for credit unions.  Thus the provisions originated during the same financial crisis, as part of the same comprehensive legislation, and with apparently a shared outcome in mind.  *See* Arnold & Porter LLP, *Text of Amendments to H.R. 1278 (As Reported)*

*Submitted to the House Rules Committee June 2, 1989, in Legislative History: P.L. 101–73*, 1989 WL 1178218, at \*31 (addressing early and unenacted amendment to § 1787 in FIRREA, but noting that the changes were "intended to maintain [NCUA's] historical comparability in function with the FDIC . . . . [and] to provide the NCUA with the same rights, powers, privileges, and duties as are being granted the FDIC").

Based on these similarities, it is not surprising that Courts have analogized the two sections. *See In re George E. Bumpus, Jr. Constr. Co.*, 226 B.R. 724, 725 n.4 (1st Cir. 1998) ("The statute governing the NCUA claims process is in substance identical to that governing claims against the FDIC."); *United States v. Metz*, 791 F. Supp. 2d 533, 538 (N.D. W.Va. 2011) (acknowledging § 1787's exhaustion requirement); *Lafayette Fed. Credit Union v. Nat'l Credit Union Admin.*, 960 F. Supp. 999, 1003 (E.D. Va. 1997) (analogizing § 1821's exhaustion requirement to claims against NCUA under § 1787).

And while few opportunities have arisen to consider § 1787(b), the same is not true for § 1821(d) dealing with FDIC-insured banks. *See Estate of Underwood v. Nat'l Credit Union Admin.*, 665 A.2d 621, 628–29 (D.C. 1995) (citing cases analyzing § 1821). These courts confirm that Congress intended a dual approach to a claimant's rights after an adverse-agency determination. Section 1821(d) requires that a claimant exhaust administrative remedies by seeking a determination of the claim prior to pursuing judicial relief. *Meliezer*, 952 F.2d at 881–82. And because Congress intended to create an initial review process for expeditiously handling claims against liquidated institutions before they proceed to court, a claimant may not simultaneously exhaust administrative remedies and pursue a judicial remedy. *Carney v.*

*Resolution Trust Corp.*, 19 F.3d 950, 955–56 (5th Cir. 1994).  This is precisely what occurs

under § 1787(b).

As for the standards that apply post-determination when claimants continue their federal

suits and seek judicial remedy, the Fifth Circuit plainly answered the question.  "After exhaustion

of [these] streamlined administrative procedures, a claimant has a choice to either bring the claim

*de novo* in the District Court . . . or have the claim determination reviewed by one or more

administrative processes . . . ."  *Meliezer*, 952 F.2d at n.6 882 (quoting H.R. Rep. 101–54(I),

*supra*, 1989 U.S.C.C.A.N. at 214).   The Fifth Circuit explained, though possibly in dicta:

> The primary purpose underlying FIRREA's exhaustion scheme is apparent.  It
> allows the RTC to perform its statutory function of promptly determining claims
> so as to quickly and efficiently resolve claims against a failed institution without
> resorting to litigation.  Further, the exhaustion scheme mandated by FIRREA is
> reasonable, given the brevity of the exhaustion procedure *and the de novo judicial
> review of claims once the procedure is exhausted*.

952 F.2d 879, 883 (5th Cir. 1992) (emphasis added) (internally citing and quoting *Rosa v.

Resolution Trust Corp.*, 938 F.2d 383 (3d Cir.), *cert. denied*, 502 U.S. 981 (1991) ("Subsection

(d) of § 1821 provides for de novo district court jurisdiction")); *see also Glover v. F.D.I.C.*, 698

F.3d 139, 151 (3d Cir. 2012) (noting that during administrative claims review process, the court

"retains jurisdiction over the litigation, to *resume* if needed at the conclusion of the stay"

(emphasis added)).

And this is exactly how the Fifth and other circuits have handled such claims.  For

example, in *Burr v. Transohio Saving*, the case was reduced to judgment and appealed to the

Fifth Circuit before liquidation.  77 F.3d 477 (5th Cir. 1995).  The district court then granted the

liquidator's Rule 12(b)(6) motion.  The Fifth Circuit noted that the timely appeal was a post-

exhaustion continuation of the original suit.  Significantly, the court did not then convert the suit

into a review under the APA and instead applied the normal standard of review. *Id*. at *5–6; *see also Molosky v. Wash. Mut., Inc.*, 664 F.3d 109, 121–22 (6th Cir. 2011) (same). In sum, the Fifth Circuit's interpretation of § 1821(d) provides significant insight into § 1787(b), and the Court concludes that the APA does not apply. The December 13, 2012 Order [26] is vacated to the extent it is inconsistent with this Order.

> B.      Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs Poole and Mills seek partial summary judgment on their claims under the FLSA and for slander. They too base their arguments on the administrative record. Accordingly, their motion [35] is denied without prejudice.

> C.      Motion to Dismiss without Prejudice

On January 18, 2013, Plaintiffs filed a "Voluntary Motion for Dismissal Without Prejudice" [36], in which they attempted to voluntarily dismiss all claims except for Poole and Mills's FLSA and slander claims. The motion stated that it was "based on the Court's December 13, 2012 Order" clarifying that the APA would apply to all claims. As NCUA recognized, the motion to dismiss was an apparent attempt to avoid a summary-judgment ruling on those claims. NCUA therefore opposed the stipulation unless the Court dismissed the claims with prejudice, again basing its arguments on application of the APA. Some of the claims were dismissed in the companion case and may well be due for dismissal here. But it is difficult to tell whether the claims in the present motion are in some way different. Regardless, because both parties premised their positions on the now-vacated December 13, 2012 Order, the Court concludes that the motion should be denied without prejudice.

D.       The Pending Motions and Future Proceedings

The Court recognizes that for nearly a year the parties have litigated the lawsuit as an

administrative appeal subject to deferential review under the APA and that this Order may be

somewhat jarring to the smooth disposition of this litigation.  Regardless, the law must be

followed with a few obvious consequences.

To begin with, NCUA's motion for summary judgment must be denied without prejudice

because it is based on the wrong standard of review.  That said, this Order is certified for

interlocutory appeal.  Neither party offered cases deciding whether the APA applies to this

continued claim under § 1787(b).  And the correct answer to that open question will not only

determine the proper standard of review but also the scope of discovery and the record that may

be reviewed at trial.  The Court therefore finds that the case "involves a controlling question of

law as to which there is substantial ground for difference of opinion and that an immediate

appeal from the order may materially advance the ultimate termination of the litigation . . . ."  28

U.S.C. § 1292(b).

In addition, this Order raises the potentially interlocking issues of reconsolidation and

discovery.  In support of its Motion to Sever filed in the original action, NCUA argued that the

APA applies to the claims against it, so "[t]he claims should be severed because of the

completely different procedural process to be employed."  *See* Def.'s Response [19] Ex. 1 at 10.

That is no longer true.  But since severance the original case has moved past the discovery and

motion deadlines.

Given the overlapping nature of the two suits, it is difficult to tell from this record

whether any discovery remains to be conducted in the present suit that was not addressed in the

original action against the alleged decisionmakers. And while the Court would have authority to *sua sponte* address consolidation, *Miller v. U.S. Postal Serv.*, 729 F.2d 1033, 1036 (5th Cir. 1984), such a ruling seems improvident without a clearer picture of the discovery status. Accordingly, the parties are instructed to contact Magistrate Judge Ball to set a status conference regarding the scope of discovery and the consolidation issue. Judge Ball will rule accordingly.

III.    Conclusion

The Court has considered all the parties' arguments. Those not specifically addressed would not have changed the outcome. For the foregoing reasons, all motions are denied without prejudice. The parties are directed to contact Magistrate Judge Ball within one week of this order to discuss the scope of remaining discovery and the possibility of reconsolidation. This Order is certified for interlocutory appeal.

**SO ORDERED AND ADJUDGED** this the 19th day of September, 2013.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

15